UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBA CASTANO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1450 |
| | § | |
| WAL-MART STORES TEXAS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for summary judgment filed by defendant Wal-mart

Stores Texas, LLC ("Wal-mart"). Dkt. 18. After considering the motion, response, and applicable

law, the court is of the opinion the motion should be GRANTED.

I. BACKGROUND

This is a premises liability case in which plaintiff Alba Castano contends she sustained

injuries after slipping on a pink substance on the floor of Wal-Mart Store Number 2066. Dkt. 24.

Her left foot slipped on the substance, but she was able to stop from falling by grabbing onto her

shopping cart. Dkt. 22, Ex. 1 at 20. Castano notified a Wal-Mart employee, Etelvina Jabur, about

the incident.[1] Dkt. 22, Exs. 2–4. Wal-Mart has a "customer incident claims process" ("Claims

Process"), which outlines steps Wal-Mart employees should take when responding to an incident.

Dkt. 22, Ex. 5. The Claims Process requires Wal-Mart employees to use a digital camera to take

photos of the scene and to not discard any evidence without first consulting a case manager. *Id.*

Additionally, if responding to a "slip and fall / trip and fall incident," Wal-Mart employees must take

---

[1] Castano relies on a rough draft of Jabur's deposition transcript. *See* Dkt. 22, Ex. 2.
Wal-Mart did not object to use of the rough draft, so the court relies on it as evidence.

several steps including determining what was on the floor, where it came from, and how long it had been there. *Id.* Here, a surveillance video indicates that neither Jabur nor the manager that eventually responded took photos of the accident or any of the steps outlined in the Claims Process for a slip and fall or trip and fall incident. *See id.* Instead, Jabur wiped up the substance with what appears to be paper towels and later mopped the area. *Id.*

Wal-Mart filed a motion for summary judgment, arguing that there is no evidence that it had any actual or constructive knowledge of the spill and that Castano thus cannot make out a premises liability claim.[2] Dkt. 18. Castano contends that her testimony along with the surveillance video of the slip and Jabur's response is sufficient to show that the condition existed long enough to give Wal-Mart a reasonable opportunity to discover the condition. Dkt. 22-1. Castano additionally argues that Wal-Mart had a duty to preserve evidence under its Claim Process and that its failure to do so has prejudiced her ability to respond to Wal-Mart's motion for summary judgment. *Id.* She contends that the failure to document the spill and retain the paper towels used to clean it in accordance with the Claims Process was negligent spoliation. *Id.* She requests that the court remedy Wal-Mart's negligent spoliation by allowing her to present her case to a jury. *Id.* Wal-Mart did not file a reply.

## II. LEGAL STANDARD

### A.     Motion for Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for

---

[2] Wal-Mart also moved to dismiss Castano's negligence claim, but Castano has since voluntarily amended her complaint to remove the negligence claim. Dkts. 18, 24.

the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The

moving party bears the initial burden of demonstrating the absence of a genuine issue of material

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets its

burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue

for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the

non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org.*

*v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.        Premises Liability**

Here, the parties do not dispute that Castano was Wal-Mart's invitee.  The duty an owner

owes to an invitee under Texas law "is to exercise reasonable care to protect against danger from a

condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew

or by the exercise of reasonable care would discover."  *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97,

101 (Tex. 2000).  A "condition is not unreasonably dangerous simply because it is not foolproof."

*Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007).

> To recover damages in a slip-and-fall case, a plaintiff must prove:
> (1) Actual or constructive knowledge of some condition on the premises by the owner/operator;
> (2) That the condition posed an unreasonable risk of harm;
> (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
> (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).  The burden of proving

causation in these cases is difficult for plaintiffs, but the "'fact that proof of causation is difficult

does not provide a plaintiff with an excuse to avoid introducing some evidence of causation.'"  *Id.*

at 937 (quoting *Schaefer v. Tex. Emp'rs' Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex.1980)).

The plaintiff may show that the defendant had actual or constructive knowledge of the slippery substance on the floor by showing:

> (1) the defendant placed the substance on the floor,
> (2) the defendant actually knew that the substance was on the floor, or
> (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.

*Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). "[W]hen relying on circumstantial evidence to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552, 555 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## C.    Spoliation

"[F]ederal courts . . . apply federal evidentiary rules rather than state spoliation laws in diversity suits." *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). "Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) (Rosenthal, J.) (citing The Sedona Conference, *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 48 (2d ed. 2007)). "A party's failure to reasonably preserve discoverable evidence may significantly hamper the nonspoliating party's ability to present its claims or defenses, . . . and can 'undermine the truth-seeking function of the judicial system and the adjudicatory process.'" *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 16–17 (Tex. 2014) (quoting Justice Rebecca Simmons and Michael J. Ritter, *Texas Spoliation 'Presumption'*, 43 St. Mary's L.J. 691, 701 (2012)) (other citations omitted). A duty to preserve generally arises when the party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *Rimkus*

*Consulting Grp.*, 688 F. Supp. 2d at 612 (quotations and citation omitted).  In the Fifth Circuit, a party alleging spoliation must show that the other party "acted in 'bad faith' to establish that it [is] entitled to an adverse inference."  *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *see Condrey*, 431 F.3d at 203 ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"); *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (unpublished) ("'[M]ere negligence is not enough' to warrant an instruction on spoliation." (quoting *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)); *In re Actos (Pioglitazone) Products Liability Litig.*, No. 6:11-md-2299, 2014 WL 2872299, at *13 (W.D. La. June 23, 2014) (noting that if "the court's inherent power provides the source of authority for sanctions," then "the conduct at issue must involve some degree of bad faith").

### III. ANALYSIS

The court will first address whether Castano is entitled to an adverse inference due to Wal-Mart's alleged spoliation of evidence and will then determine whether Castano has presented enough evidence of Wal-Mart's knowledge or constructive knowledge of the dangerous condition to survive summary judgment.

#### A.    Spoliation

Castano contends that the best evidence of what the substance was and how long it had been on the floor would have been photographs and measurements taken pursuant to the procedures outlined in the Claims Process.  Dkt. 22-1.  Castano requests that the court allow her the opportunity to present her case to the jury due to Wal-Mart's alleged spoliation of this evidence.  *Id.*

Jabur testified that Castano approached her on the date of the incident, asked if she worked at Wal-Mart, and told her that she (Jabur) was Castano's "witness."  Dkt. 22, Ex. 2 at 22.  Jabur did

not see Castano slip. *Id.* at 21. Jabur testified that she recalled calling a manager. *Id.* at 22. She does not, however, recall cleaning the substance off of the floor. *Id.* at 23. She does not recall discussing what the substance may have been with her manager, taking any photos, or retaining the paper towels that were used to wipe up the spill. *Id.*

Castano asserts that Wal-Mart's failure to document the substance in accordance with its Claims Process was negligent spoliation. Dkt. 22-1. She contends that Wal-Mart had a duty to determine what was on the floor, measure how big the spill was, and take photos, as per the requirements for a "slip and fall / trip and fall incident" in the Claims Process document. *Id.* Castano must, however, have some evidence of bad faith to obtain a spoliation remedy in federal court. Castano has not provided any evidence that the court could construe as indicative of bad faith. Moreover, since Castano did not actually fall, it is questionable whether the actions outlined in the "slip and fall /trip and fall incident" portion of the Claims Process even apply.

Castano's request for a spoliation remedy that would allow her the opportunity to present her case to a jury should the court otherwise find that she has not presented sufficient evidence to sustain a premises liability claim is DENIED.

## B.    Premises Liability

The court now turns to whether Castano has presented sufficient evidence to survive summary judgment without the spoliation remedy she requests. Wal-Mart asserts that summary judgment should be entered in its favor because Castano has no evidence that Wal-Mart knew or should have known about the slippery substance on the floor. Dkt. 18. Castano contends that there is a genuine issue for trial because (1) her testimony indicates that she believes the liquid had started to dry and that Jabur had to use wet cloths to clean it; and (2) the surveillance video indicates that Jabur had difficulty cleaning the spill, which also tends to show it had begun to dry. Dkt. 22-1.

Castano testified as follows regarding her recollection of the substance on which she slipped:

Q.      Do you recall what you slipped in?
A.      There was something liquid.
Q.      Okay.  Do you recall the color of the liquid?
A.      It was a – it looks something like a pink color, yeah, pink.
Q.      Did you see the liquid for the first time before or after you slipped?
A.      After.
Q.      And how would you describe the size of the liquid?
A.      It wasn't very big because if it were big, you know, it could have been seen.
Q.      Do you recall in your recorded interview describing it as the size of an adult hand?
A.      I don't remember exactly.
Q.      This is a weird question.  Did the liquid have any odor that you could detect?
A.      No.  I never felt any smell.
Q.      And I'm going to explain why I asked that question.  The liquid has been described as possibly shampoo or ice cream.  Do you have an opinion as to whether the liquid was shampoo or ice cream?
A.      No, I would not be able to describe it.
Q.      Okay.  Did you see any cups or containers in the area of the liquid?
A.      No, sir, there wasn't anything.
Q.      Okay.  Going back to the appearance of the liquid, did you see any dirt or shopping cart tracks through the liquid?
A.      I didn't pay attention to that.
Q.      Okay.  Could you tell if the liquid was wet or if it was dry?
A.      I'm not able to tell you that either.
Q.      Okay.
A.      I just know that it's pink when the lady started to clean it up.
Q.      Okay.  Did you ever touch the liquid with your hand?
A.      No, sir.
Q.      Did you actually fall to the floor in the liquid, or did your foot slip?
A.      I just slipped because I was able to grab onto the cart.
Q.      Okay.  And what foot slipped?  Your right foot or left foot?
A.      The left.
Q.      I just want to make sure we're clear.  Did any part of your body hit the floor?
A.      No, sir.
Q.      And as we sit here today, did you have any idea where the liquid came from?
A.      No, sir.

> Q.      As we sit here today, do you know how long the liquid existed on the floor before you slipped in it?
> A.      Well, I think it had been there for a while because the lady brought some wet cloths, like wet paper, because it was sort of like in a circle shape. And I didn't pay that much attention to it, but she just went and cleaned it up.

Dkt. 22, Ex. 1 at 18–20.  Additionally, Castano testified:

> Q:      Okay, So do you know if any part of the liquid had started to dry?
> A.      I believe so.
> Q.      Okay.  You believe so, but do you know if it had started to dry?
> A.      Not with certainty.

Dkt. 22, Ex. 1 at 42–43.  In sum, Castano did not see any dirt in the liquid, she believes it may have been drying, and she bases that opinion on how difficult it was for Jabur to clean the spill.  A review of the video confirms that Jabur exerted some effort to clean the spill, using some sort of paper to clean it initially and later going over the area with a mop.  Dkt. 22, Ex. 3.

In *Kofahl v. Randall's Food & Drugs, Inc.*, the plaintiff testified that she slipped on a large puddle of liquid and that the edges of the puddle were "tacky and gummy" as if the puddle had started to dry up.  151 S.W.3d 679, 681 (Tex. App.—Waco 2004, pet. denied).  The court noted that "this type of testimony will support a finding that a liquid on the floor has been there for a sufficient length of time to charge the premises owner with constructive knowledge of its presence." *Id.* at 681 (collecting cases).  On the other hand, evidence that a liquid was dirty or had shopping cart tracks running through it is insufficient to establish constructive knowledge. *Id.*  Similarly, evidence that macaroni salad on which a customer slipped had dirt or cart tracks on it when the salad was on a heavily-traveled aisle was insufficient proof that the salad had been on the floor long enough to establish constructive knowledge. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 937 (Tex.

1998). Testimony that a salad "seemed like it had been there awhile" was considered to be a "mere speculative, subjective opinion of no evidentiary value." *Id.*

Here, Castano's testimony that she believes the liquid had started to dry but did not know that with certainty is, like the plaintiff with the macaroni salad that seemed like it had been there for awhile, too speculative to meet her burden of showing Wal-Mart had constructive knowledge of a dangerous condition. Her testimony that she believed it had been there for some time because Jabur had to use wet cloths to clean it up along with the video showing the effort used to clean the spill is more probative of the amount of time the liquid may have been on the floor. However, the Texas Supreme Court has held that "when circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition," and that circumstantial evidence that "supports only the *possibility* that a dangerous condition existed long enough to give [the proprietor] a reasonable opportunity to discover it" is not sufficient. *Gonzales*, 968 S.W.2d at 936. "[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding [of constructive notice.]" *Id.* Here, there are numerous reasons why it would take some effort to clean a substance off of a floor that do not include the spill being partially dry. The court finds that the evidence presented supports only the possibility that the substance had been there long enough to give Wal-Mart a reasonable opportunity to discover the spill. This is not sufficient. Wal-Mart's motion for summary judgment on Castano's premises liability claim is thus GRANTED.

**IV. CONCLUSION**

Wal-Mart's motion for summary judgment is GRANTED.  Castano's premises liability claim is hereby DISMISSED WITH PREJUDICE.  A final judgment will issue concurrently with this order.

Signed at Houston, Texas on May 7, 2015.

_____
Gray H. Miller
United States District Judge